STATE OF NORTH CAROLINA v. DONNIE RAY OUTLAW, Defendant

No. COA02-584

(Filed 5 August 2003)

**1. Drugs— trafficking in cocaine—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charge of trafficking in cocaine by possession even though defendant contends there was insufficient evidence to support a finding that defendant possessed 28 grams or more of cocaine, because the evidence was sufficient to permit a jury to find that defendant had the intent and capability to maintain control and dominion over at least the 63.5 grams of crack cocaine found in a tupperware container that belonged to defendant's girlfriend and came from defendant's apartment.

**2. Drugs— conspiracy to traffic in cocaine by possession—failure of indictment to include weight of cocaine**

Defendant was improperly convicted for conspiracy to traffic in cocaine by possession because the indictment failed to include the weight of the cocaine possessed, and that fact was an essential element of the offense charged.

Appeal by defendant from judgments entered 31 January 2002 by Judge Howard E. Manning, Jr., in Person County Superior Court. Heard in the Court of Appeals 17 February 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Robert R. Gelblum, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*

GEER, Judge.

Defendant challenges his conviction for trafficking in cocaine by possession and for conspiracy to traffic in cocaine. He argues in this

appeal (1) that the trial court should have granted his motions to dismiss for insufficient evidence; and (2) that the indictment for conspiracy to traffic in cocaine by possession was defective for failing to allege the amount of cocaine. We hold that the trial court properly denied defendant's motions to dismiss, but, based on *State v. Epps*, 95 N.C. App. 173, 381 S.E.2d 879 (1989), we arrest judgment as to the conspiracy charge.

On 8 January 2001, defendant was indicted for trafficking in cocaine by possession, conspiracy to traffic in cocaine, and maintaining a dwelling for the keeping and sale of controlled substances. The jury found defendant guilty of the first two charges, but found him not guilty of the maintaining a dwelling charge. The court sentenced defendant to a minimum of 35 months and a maximum of 42 months for each charge with the sentences running consecutively. Defendant appealed.

The State's evidence tended to show the following. Defendant lived with his girlfriend, Demetrius Smith, in Apartment 4 at 116 Lankford Street, Roxboro, North Carolina. Ms. Smith testified that defendant "made his money" selling drugs and that she had seen him both selling and packaging drugs. According to Smith, defendant, Senica Williams, and Gregory Trotter all sold drugs for Darrell Thompson, who lived in the same area.

On 26 September 2000 and 5 October 2000, the Person County Sheriff's Department conducted surveillance of Apartment 4. After observing traffic going in and out of the apartment, they sent a confidential informant into the apartment to buy drugs. On each occasion, officers had seen defendant standing outside the apartment prior to the confidential informant's entering the apartment.

On 25 October 2000, the Sheriff's Department conducted additional surveillance of the apartment. While Deputy Rodney Chandler was watching from behind the apartment, he saw defendant exit the back door, walk down a set of stairs, reach down and pick up an object from the right side of the steps, and then return to the apartment with the object. A little later, both Chandler and Narcotics Officer Joe Weaver saw another male, Senica Williams, walk out the back door, jump up on the handrail of the steps, either place something in or remove something from the rain gutter, and return to the apartment. The officers also saw a shovel lying in the middle of the woods behind the apartment.

STATE v. OUTLAW

[159 N.C. App. 423 (2003)]

On the next day, 26 October 2000, the Person County Sheriff's Department obtained a search warrant for Apartment 4 at 116 Lankford Street. Before serving the warrant, officers again watched the apartment. Within 45 minutes, they observed seven or eight people enter the apartment, with each staying only two or three minutes and then leaving, behavior that Lt. Linwood Clayton described as "routine activity" for a place where drugs were being sold. They again sent a confidential informant into the apartment who was able to purchase a quantity of cocaine.

Weaver, who on 26 October 2000 was watching the back of the apartment with his partner Chandler, saw defendant come out of the apartment, sit down on the bottom step, reach down between his legs, and "fiddle with" something under the bottom step. He then stood up and went back into the apartment. A few minutes later, Gregory Trotter left the back door of the apartment and headed into the woods where Chandler was watching. The officers secured Trotter and proceeded to execute the search warrant.

When the officers entered Apartment 4, they found and arrested, in addition to Trotter, defendant, his girlfriend Demetrius Smith, her sister LaToya Smith, and Senica Williams. Lt. Clayton testified that when they searched defendant, they found no drugs, but did find $794.00 in cash. In a search of the apartment—lived in by defendant and his girlfriend—the officers found two rocks of cocaine on the floor in one bedroom and one or two grams in defendant's bedroom. In the kitchen, the officers found clear tupperware bowls with blue covers owned by defendant's girlfriend, digital scales under the sink, and a small, manual scale. Smith testified that the scales had been used for packaging drugs.

The officers then conducted a search outside behind the apartment. Under the bottom step of the stairs, they found a tupperware bowl that matched the bowls inside the apartment. The bowl contained 63.5 grams of crack cocaine individually packaged in different selling amounts. The officers also searched the gutter above the stairs and found a small amount of crack cocaine. In the woods, next to the shovel and near the location where Gregory Trotter was arrested, the officers found 111.5 grams of crack cocaine.

## Motion to Dismiss

[1] In his first assignment of error, defendant contends that the trial court erred in denying his motions to dismiss, arguing that the State

failed to present sufficient evidence to support a finding that defendant possessed 28 grams or more of cocaine. We disagree.

In considering a motion to dismiss in a criminal case, the trial judge must decide whether there is substantial evidence of each element of the offense charged. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing a trial court's denial of a motion to dismiss, the appellate court views the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in the evidence in favor of the State. *State v. Taylor*, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994).

Trafficking in cocaine by possession of at least 28 grams but not more than 200 grams of cocaine is a violation of N.C. Gen. Stat. § 90-95(h)(3)(a) (2001). Possession of the drugs need not be exclusive. *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) ("Proof of nonexclusive, constructive possession is sufficient."). It is, therefore, irrelevant that Trotter and Williams may also have had possession of the cocaine.

In addition, the prosecution is not required to prove actual possession; constructive possession is sufficient. *State v. Hamilton*, 145 N.C. App. 152, 155, 549 S.E.2d 233, 235 (2001). Constructive possession occurs when "a person has the intent and capability to maintain control and dominion over [a] thing." *State v. Morris*, 102 N.C. App. 541, 545, 402 S.E.2d 845, 847 (1991). If, however, the drugs are found on premises not within the exclusive control of the defendant, "constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *Brown*, 310 N.C. at 569, 313 S.E.2d at 589. "[M]ere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession." *State v. Balsom*, 17 N.C. App. 655, 659, 195 S.E.2d 125, 128 (1973) (internal quotation marks omitted).

Here, the State offered substantial evidence not only that defendant resided and was present at the premises where the cocaine was found, but also that twice he was seen handling an object located near the bottom step of the stairs from his apartment, precisely where the police found a tupperware container containing 63.5 grams of crack cocaine, and that the tupperware container belonged to his

girlfriend and came from his apartment. In addition, the State offered evidence that crack cocaine was found in defendant's bedroom; that defendant sold drugs in that apartment; that defendant kept scales in his apartment used to weigh drugs; and that, at the time of arrest, defendant had a large quantity of money on his person, which—given his lack of any other job or source of income—a jury could conclude came from the sale of drugs. This evidence was sufficient to permit a jury to find that defendant had the intent and capability to maintain control and dominion over at least the 63.5 grams of crack cocaine in the tupperware container.

Because sufficient evidence exists in support of each element of the offense, the trial court did not err in denying defendant's motions to dismiss. This assignment of error is, therefore, overruled.

### Conspiracy to Traffic in Cocaine by Possession

[2] Second, defendant challenges his conviction for conspiracy to traffic in cocaine by possession on the grounds that the indictment failed to allege the quantity of cocaine involved. Based on *State v. Epps*, 95 N.C. App. 173, 318 S.E.2d 879 (1989), we agree and arrest judgment as to the conspiracy charge.

Defendant did not object to the sufficiency of the indictment before the trial court. Although, generally, a failure to object to the indictment at trial would preclude review on appeal, "when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court." *State v. Call*, 353 N.C. 400, 429, 545 S.E.2d 190, 208, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001).

N.C. Gen. Stat. § 15A-924(a)(5) (2001) states that an indictment must contain "a plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." The conspiracy indictment in this case stated only that defendant "unlawfully, willfully and feloniously did conspire with Senica Jamar Williams, Demetrius Smith, Latoya Smith and Gregory M. Trotter to commit the felony of trafficking in crack cocaine, in violation of G.S. 90-95(i)." The indictment did not include the weight of the cocaine involved.

STATE v. OUTLAW

[159 N.C. App. 423 (2003)]

Under identical circumstances, our Court, in *Epps*, 95 N.C. App. at 175-76, 381 S.E.2d at 881, arrested judgment on a conviction for conspiracy to traffic in cocaine because the indictment, by omitting any reference to the weight of the cocaine, "did not clearly allege all of the material elements to support a conviction for conspiracy to traffic in cocaine . . . ." Specifically, the Court held: "An indictment for conspiracy to traffic in cocaine must sufficiently demonstrate that the alleged offender was facilitating the transfer of '28 grams or more of cocaine.' " *Id.* at 175, 381 S.E.2d at 881.

The State makes no attempt to distinguish *Epps*, but rather argues that we should reject *Epps* in favor of the United States Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 152 L. Ed. 2d 860 (2002), discussing federal indictments. Since *Cotton* does not involve controlling constitutional analysis, it is not binding precedent on this Court and *Epps* remains the law in North Carolina. *See also State v. Hunt*, 357 N.C. 257, 273, 582 S.E.2d 593, 603 (2003) ("[I]n prosecutions where short-form indictments are not used and the indictment alleges elements of a lesser crime, there is no statutory authority (sometimes referred to as 'jurisdiction') to enter judgment based upon a verdict finding defendant guilty of the greater crime."). Since the indictment in this case did not include the weight of the cocaine possessed and that fact was an essential element of the offense charged, judgment as relates to the conspiracy charge must be arrested.

Defendant has raised the additional argument that his conviction for conspiracy to traffic in cocaine must be vacated because of a fatal variance between the indictment and the evidence presented at trial regarding the identity of the co-conspirators. Because of our decision to arrest judgment on that conviction, we do not address that assignment of error.

No error in part; judgment is arrested as to 00 CRS 6363.

Chief Judge EAGLES and Judge MARTIN concur.