STATE OF NORTH CAROLINA v. ARDELL RICHARD JORDAN

No. 76A81

(Filed 3 March 1982)

**1. Criminal Law § 80.1— identification of letter later ruled inadmissible—failure to suppress identification**

In a prosecution for burglary, attempted rape and first degree sexual offense, the trial court did not commit prejudicial error in failing to suppress the victim's identification of a letter as one she received from an unknown person approximately a year prior to the offenses charged when the court later ruled that the letter itself was inadmissible because it had not been connected to defendant since (1) defendant failed to preserve his objection by moving to strike the earlier testimony at the time the letter was ruled inadmissible and (2) the failure to suppress was not prejudicial to defendant in light of the victim's positive identification of defendant and the overwhelming evidence of defendant's guilt.

**2. Criminal Law § 93— refusal to change order of proof—no abuse of discretion**

In a prosecution for burglary, attempted rape and first degree sexual offense in which the victim positively identified defendant as her assailant, the trial court did not abuse its discretion in refusing to permit defendant to depart from the order of proof and introduce into evidence during cross-examination of the State's witnesses a lamp which provided the only light in the victim's bedroom and a picture of the victim wearing glasses where it appears that defendant was fully able to assail the victim's identification testimony through cross-examination, and his defense was not prejudiced because he was required to wait his turn to introduce the exhibits and pass them to the jury.

**3. Burglary and Unlawful Breakings § 6.3; Constitutional Law § 58; Criminal Law § 126— right to unanimous jury verdict—use of disjunctive for requisite intent for burglary**

Defendant was not denied his constitutional right to a unanimous verdict in a prosecution for first degree burglary by the trial court's instruction that defendant must have intended "to commit rape and/or first degree sexual offense" at the time of the breaking and entering where it is obvious, when the charge is read as a whole, that the court conveyed to the jury that the verdicts must be unanimous as to every essential element and that the instruction containing the disjunctive was a shorthand statement that the jurors must all find that defendant had the intent to commit rape or that they must all find that defendant had the intent to commit a first degree sexual offense.

**4. Criminal Law § 102.8— jury argument—no comment on defendant's failure to testify**

The district attorney's jury argument that defendant had not produced any alibi witnesses and his question, "Where are the witnesses who can put him anywhere else?" did not constitute an impermissible comment on defendant's failure to testify.

ON appeal from judgments imposed by *Strickland, Judge,* at the 30 March 1981 Criminal Session of Superior Court, NEW HANOVER County.

Defendant was charged in indictments, proper in form, with first degree burglary, G.S. § 14-51 (1981), attempted first degree rape, G.S. § 14-27.2, .6 (1981), first degree sexual offense, G.S. § 14-27.4 (1981), and crime against nature, G.S. § 14-177 (1981). He was convicted by a jury of first degree burglary, assault on a female, and first degree sexual offense and was sentenced to ten years, two years and life imprisonment, respectively. He appeals his conviction of first degree sexual offense to this Court as of right pursuant to G.S. 7A-27(a). We allowed his motion to bypass the Court of Appeals on the burglary and assault convictions on 23 October 1981.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Charles J. Murray and Associate Attorney K. Michele Allison, for the State.*

*Appellate Defender Adam Stein and Assistant Appellate Defender Marc D. Towler for defendant-appellant.*

CARLTON, Justice

I

On 29 December 1980 at about 4:30 a.m. Robin Wellington was awakened in her bedroom by a man, whom she identified as defendant, who was holding a razor to her throat. He told her not to move. Defendant was also armed with a gun. He forced Wellington to perform fellatio on him. After the oral sex act had been completed, defendant put a nylon stocking over his head and forced Wellington out of bed and into the living room, where Angela Moore was sleeping. Defendant woke Moore up and told her that he would blow her away if she resisted. The two women were forced to remove their clothing, and defendant touched their breasts and genital areas.

Defendant told Wellington that he had entered the house by placing an oil drum under the bathroom window, breaking the window and cutting the venetian blinds. He told them not to report the incident. After defendant left, Wellington discovered that the bathroom window had been broken and the blinds torn.

When Wellington had gone to bed that night the window and blinds were undamaged.

Wellington reported the incident to the police two days later. She identified her assailant by name and gave a detailed description of him. Although Wellington positively identified defendant as the man who had broken into her home and assaulted her, Moore was unable to make a positive identification.

Defendant presented three character witnesses who testified to his good character.

At the close of the evidence the case was submitted to the jury, which returned the verdicts set out above.

II

[1] Defendant first assigns error to the identification of a letter received by Wellington nearly a year prior to the offenses charged. During direct examination Wellington identified a document marked as State's Exhibit Number 1 as a letter she had received in January of 1980. She testified that at the time she received it she did not know who had written it. Later in the State's case, the trial judge ruled that the letter was inadmissible, and the letter was never shown nor were its contents related to the jury.

Defendant argues that the trial judge's failure to suppress the earlier references to the letter at the time he ruled that the letter itself was inadmissible constitutes reversible error. We disagree for two reasons. First, defendant failed to preserve his objection by moving to strike the earlier testimony at the time the letter was ruled inadmissible and, second, defendant has not met his burden of proving that failure to suppress the contested evidence prejudiced him.

The testimony of Wellington concerning the letter had no apparent relevance to the case unless and until the letter was somehow linked or "connected up" to defendant. Wellington's testimony was properly admitted pending the admission of evidence that would tie the letter to defendant. *See State v. Black,* 51 N.C. (6 Jones) 510 (1859); *McCormick on Evidence* § 58 (2d ed. 1972). When it later became obvious, by virtue of the ruling that the letter itself would not be admitted, that the State

could not "connect up" the earlier testimony to the defendant, it was the defendant's duty to move to strike the earlier testimony. *Id.* By failing to make such a motion, he has waived his objection to the challenged testimony.

Even were we to conclude that defendant had not waived his objection to this evidentiary matter, he would still have to show that he was prejudiced, *i.e.*, that there is a reasonable possibility that a different result would have been reached had the alleged error not been committed. G.S. § 15A-1443(a) (1978). He has not met that burden here. Wellington testified only that she had received a letter in January of 1980 and that she did not then know who had sent it. Defendant argues that the jurors were likely to have deduced that defendant had sent the letter and that they were likely to have speculated about the letter's contents to defendant's prejudice. We refuse to indulge in the presumption, based on Wellington's testimony that she had received a letter from an unknown person, that the jurors would range so far afield in their beliefs as to what the evidence showed. Wellington's positive identification of defendant and overwhelming evidence of defendant's guilt compels the conclusion that there is no reasonable possibility that a different result would have been reached had the letter never been shown to the witness.

### III

[2] During cross-examination of State witness Wellington, defendant sought to discredit her identification testimony by questioning the sufficiency of the lighting in the bedroom where the assault occurred and by questioning Wellington's eyesight. Additionally, he sought to introduce into evidence the lamp which provided the only light in Wellington's bedroom and a picture of Wellington wearing glasses. The trial judge refused to admit these exhibits into evidence because they were tendered during the presentation of the State's case. Defendant contends that the trial court's refusal to allow these exhibits into evidence during the cross-examination of the State's witness constitutes an abuse of discretion and entitles him to a new trial.

Defendant accepts the general rule that a criminal defendant has no right to introduce exhibits into evidence during the presentation of the State's case, *State v. Knight*, 261 N.C. 17, 134

S.E. 2d 101 (1964), but contends that the trial court may, in its discretion, admit the exhibits, citing *State v. Temple*, 302 N.C. 1, 273 S.E. 2d 273 (1981). Under the facts of this case, defendant argues, the trial court abused its discretion in refusing to allow the exhibits into evidence during the State's case.

*Temple* stands for the proposition that the order of presentation or proof at a criminal trial is a rule of practice, not of law, and may be altered when the trial court, in its discretion, considers a departure necessary to promote justice. *See also State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972); *State v. Thomas*, 244 N.C. 212, 93 S.E. 2d 63 (1956). Defendant contends that the trial court abused its discretion here because the exhibits defendant sought to have admitted could have their "designed effect" in assailing Wellington's testimony only during defendant's cross-examination of that witness. Additionally, defendant argues, departing from the order of proof would not have disrupted the trial. Our task is to determine whether the trial court's refusal to depart from the order of proof so handicapped the defendant in the presentation of his defense as to amount to a denial of justice. Only then would the trial court's ruling amount to an abuse of discretion.

The "designed effect" of the exhibits proffered by defendant was to attack Wellington's identification testimony. Defendant elicited on cross-examination of Wellington an admission that the only light in her bedroom on the night of the burglary was a small lamp with a blue bulb positioned about twenty feet from her bed and that defendant stood so that only one side of his face was illuminated. Wellington also identified a picture of herself wearing glasses but claimed that they were "shades," nonprescription sunglasses. It appears to us that defendant was fully able to assail Wellington's identification testimony through cross-examination and we perceive no prejudice to his defense by requiring him to wait his turn to introduce the exhibits and pass them to the jury. We conclude that the trial court's decision not to allow the defense exhibits during the State's case was well within its discretion. Defendant's failure to introduce these exhibits during presentation of his defense was his own choice, and not a source of error.

IV

[3]   Defendant also alleges error in the trial court's instructions on first degree burglary. He contends that by instructing the jury that defendant must have intended "to commit rape and/or first degree sexual offense" at the time of the breaking and entering, the trial court denied defendant his constitutional right to a unanimous jury verdict.

The North Carolina Constitution guarantees a criminal defendant the right to a unanimous verdict. N.C. Const. art. I, § 24; *accord, State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975). To convict a defendant, the jurors must unanimously agree that the State has proven beyond a reasonable doubt each and every essential element of the crime charged. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970). Defendant contends that the use of the disjunctive in describing the requisite intent for burglary created the possibility that less than all the jurors could agree which felony the defendant intended to commit although they might all agree that defendant did have the intent to commit one of the felonies and convict him of burglary.

While defendant's argument is not unreasonable, we are not persuaded. The trial court repeatedly instructed the jury that its verdict must be unanimous. When the charge is read as a whole, as it must be, it is obvious that the trial court conveyed to the jury that the verdicts must be unanimous as to every essential element and that the instruction containing the disjunctive was a shorthand statement that the jurors must all find that defendant had the intent to commit rape or that they must all agree that defendant had the intent to commit a first degree sexual offense. While defendant is correct as to the technical meaning of the instruction, this Court must neither forget nor discount the common sense and understanding of the trial court and the jurors. From our examination of the charge we are satisfied that defendant was not deprived of his constitutional right to a unanimous jury verdict.

V

[4]   In his closing argument to the jury the district attorney noted that defendant had not produced any alibi witnesses and stated, "Where are the witnesses who can put him anywhere

else?" Defendant assigns error to this statement and argues that it amounted to an impermissible comment on defendant's failure to testify. Although defendant admits that the prosecutor did not comment directly on defendant's silence, he argues that the absence of any indication in the evidence that there existed any alibi witnesses amounts to a comment on defendant's failure to place himself away from the scene of the crime.

We are not persuaded. Although the defendant's failure to take the stand and deny the charges may not be the subject of comment, the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument. *State v. Tilley,* 292 N.C. 132, 232 S.E. 2d 433 (1977); *see State v. Bryant,* 236 N.C. 745, 73 S.E. 2d 791 (1953). The prosecutor's remark here was directed solely toward the defendant's failure to offer evidence to rebut the State's case, not at defendant's failure to take the stand himself; as such, the statement did not constitute an impermissible comment on defendant's failure to testify. *State v. Stanfield,* 292 N.C. 357, 233 S.E. 2d 574 (1977); *State v. Tilley,* 292 N.C. 132, 232 S.E. 2d 433.

VI

In conclusion, we find that defendant had a fair trial free from prejudicial error.

No error.